FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

2005 APR 14  AM 11: 49

OFFICE OF THE CLERK

IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

SHON HOPWOOD,
                    Petitioner,


V.


UNITED STATES OF AMERICA,
                    Respondent.

---

MOTION FOR RELIEF FROM JUDGMENT
UNDER F.R.CV.P. 60(b)(5)

---

CIVIL NO: 4:00 cv 3249

CRIM. NO: 4:98 cr 3056

---

SHON HOPWOOD
PRO SE
REG. NO. 15632-047
FEDERAL CORRECTIONAL
INSTITUTION- PEKIN
P.O. BOX 5000
PEKIN, ILLINOIS 61555-5000

## TABLE OF CONTENTS

Table of Contents..............................................i

Caption.......................................................1

Procedural History............................................1

Summary of Argument...........................................6

Argument......................................................7

    I.   Petitioner is entitled to Federal Rule of Civil
    Procedure 60(b)(5) relief from this Court's final
    order entered in a habeas corpus proceeding on the
    ground that, due to a significant change in decisional
    law, the judgment is no longer equitable..................7

        A:   There has been a significant change in law.......7

        B:   Federal District Courts have inherent authority
        to vacate civil judgments under F.R.Cv.P. 60(b).10

        C:   The Supreme Court, as well as the Eighth Circuit,
        have ruled that Rule 60(b)(5) authorizes relief
        from judgment when the moving party shows a
        significant change in decisional law............11

        D:   Rule 60(b)(5) relief applies equally in the
        habeas context..................................12

        E:   Petitioner's requests for a merits adjudication of
        his Apprendi claim is not a "second or successive"
        habeas application..............................15

        F:   The judgment denying Petitioner's original habeas
        motion is no longer equitable...................20

    II.  Under the tolling provision of § 2255 ¶6(3), Petitioner's
    motion is timely filed............................22

        A:   Initially recognized decisions of the Supreme
        Court...........................................22

        B:   Apprendi and Booker are newly recognized rights.23

        C:   Apprendi and Booker are retroactively applicable
        to habeas petitioners...........................23

            (1) Apprendi and Booker.........................24

## TABLE OF CONTENTS

(2) Teague's retroactivity analysis.............26

(3) Booker's remedial holding is a substantive decision which is retroactively available on collateral review.......................27

(4) Apprendi and Booker's procedural holdings are "watershed" rules of criminal procedure which justify retraoctive applications............33

III.  Petitioner's Fifth and Sixth Amendment rights were were violated when the district court increased his sentence beyond the maximum allowed under the plea agreement......41

Conclusion.................................................42

Certificate of Service....................................42

Appendix "A"
      Sentencing Memorandum to Judge Kopf

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

SHON HOPWOOD,                    Civil No: 4:00 CV 3249
        Petitioner,

                                Crim. No: 4:98 CR 3056

v.                              Before the Honorable Judge
                                Richard G. Kopf

UNITED STATES OF AMERICA,
        Respondent.

---

**MOTION FOR RELIEF FROM JUDGMENT**

Comes Now the Petitioner, Shon Hopwood, <u>pro se</u> and respectfully requests Relief from the Court's Judgment denying Petitioner's habeas corpus motion under 28 U.S.C. § 2255. Petitioner brings this motion under Federal Rule of Civil Procedure 60(b)(5). In support of this motion Petitioner states as follows:

**PROCEDURAL HISTORY**

On October 28, 1998, Petitioner plead guilty, in the United States District Court for the District of Nebraska, to an information which charged five (5) counts of bank robbery in violation of 18 U.S.C. § 2113(a), and one count of using a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1). Petitioner's plea of guilty was accepted by District Judge Richard Kopf, and the Court subsequently ordered the Probation Office to prepare a Presentence Investigation Report (hereinafter "PSR").

-1-

Shortly thereafter, the PSR was prepared.  In determining Petitioner's offense level for the robbery counts, the Probation Office assessed a five level upward enhancement pursuant to U.S.S.G. § 2B3.1(b)(2)(C), because Petitioner allegedly displayed and possessed a firearm during each of the robberies.  PSR, § 32, 40, 48, 56.  Petitioner objected to the five-level firearm enhancment. Since Petitioner had also received a separate firearm charge he believed there would be no further enhancements for the use of firearms.  See, Defendant's Objections to PSR, docket entry # 31.  The prosecution did not contest the objection to the firearm enhancement.

The district court, however, overruled Petitioner's objection to the five-level firearm enhancement.  Tentative Findings, ¶ (6), docket entry # 33.  On April 14, 1999, Petitioner was sentenced to 87 months imprisonment on the bank robbery counts and a consecutive 60 months imprisonment on the firearm charge, for a total of 147 months imprisonment.  Petitioner did not pursue a direct appeal.

On September 22, 2000, Petitioner filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255.  (Docket entry # 44). In his habeas motion, Petitioner contended: (1) that his lawyer was ineffective for failing to file a notice of appeal; and, (2) that the five-level firearm enhancement was not in the plea agreement, nor found by a jury beyond a reasonable doubt, and therefore, his sentence was unconstitutional under Apprendi v. New Jersey, 530 U.S. 466 (2000).  Petitioner also argued that his habeas petition was timely filed based on the tolling provision

-2-

of 28 U.S.C. § 2255 ¶6(3)- in that he filed his habeas petition
within one year of the Supreme Court's ruling in Apprendi, which
was a new rule that was retroactively applicable to petitioners
on collateral review.

On December 4, 2000, the district court denied Petiitoner's
§ 2255 motion. (Docket entry # 53). See, United States v. Hopwood,
122 F.Supp.2d 1077 (D. Neb. 2000). The district
court held that Petitioner's habeas petition was time barred
by the one-year statute of limitations imposed by § 2255, as
amended by the Anti-Terrorism and Effective Death Penalty Act
(hereinafter "AEDPA"). Hopwood, 122 F.Supp.2d at 1079-1080.

Specifically, the district court held that the Supreme Court had
not made the Apprendi rule retroactive, and thus, Petitioner's
§ 2255 motion was time barred. Hopwood, 122 F.Supp.2d at 1079
(citing Rodgers v. United States, 229 F.3d 704, 706 (8th Cir.
2000). Although the Rodgers case was based on a request for
a second or successive § 2255 petition, the district court determined
that the statutory language of second or successive habeas applications
were similar to the language of the tolling provision under an
initial habeas application. Hopwood, at 1079. Therefore, there
was no need for the Court to resort to the retroactivity analysis of
Teague v. Lane, 489 U.S. 288 (1989). In other words, the district
court rejected Petitioner's contention- that under § 2255 ¶6(3),
the court could make the retroactivity determination of Apprendi-
and concluded that Petitioner could not take advantage of the
tolling provision until the Supreme Court explicitly made the
Apprendi rule retroactively available to habeas petitioners.

-3-

The district court also believed that Petitioner's <u>Apprendi</u>
claim was without merit.  <u>Hopwood</u>, 122 F.Supp.2d at 1080 ("Even
if Defendant's <u>Apprendi</u> claim <u>could</u> <u>be</u> reviewed at <u>this</u> <u>time</u>,
I agree with the Magistrate Judge that it is without merit.")
(underscores added).  Since the Court had already held Petitioner's
habeas motion time-barred and because this statement was not
necessary to that holding, the statement on the merits was merely dicta
and cannot be considered a ruling on the merits of Petitioner's
<u>Apprendi</u> claim.

Petitioner filed a timely notice of appeal and a request
for a certificate of appealability to the Eighth Circuit Court
of Appeals.  On September 6, 2001, the Eighth Circuit denied
Petitioner's request for a COA and the appeal was dismissed.

-4-

## SUMMARY OF ARGUMENT

I.

The district court's denial of Petitioner's habeas motion
under 28 U.S.C. § 2255 is no longer equitable.  The court's
interpretation of the time-limitation period contained in §
2255 led to a holding that Petitioner's motion was time-barred
and that Petitioner could not take advantage of the tolling
provision of § 2255 ¶6(3).  Subsequently, the circuit courts
have unanimously rejected the district court's interpretation
of § 2255 ¶6(3).  And these circuit court opinions constitute
a significant change in law that occurred after the denial of
Petitioner's habeas motion.

Federal Rule of Civil Procedure 60(b)(5) entitles Petitioner
to relief from the district court's judgment denying Petitioner's
§ 2255 motion as untimely.  The Supreme Court has held that
60(b)(5) relief is appropriate if there has been a subsequent
change in decisional law which makes the initial judgment inequitable.
This is exactly what happened here.

Also, Rule 60(b) relief unquestionably applies in the habeas
context.  A majority of the circuits, including the Eighth Circuit,
have concluded that 60(b) relief is available to petitioners
as long as the Rule is not used to circumvent the restrictions
on second or successive habeas applications.  Here, Petitioner's
request for a merits adjudication of a claim raised in his initial
§ 2255 motion, does not constitute a second or successive application.
Therefore, Rule 60(b) relief is appropriate in this case.

-5-

II.

Petitioner's habeas motion is timely filed.  Under the
tolling provision of § 2255 ¶6(3), Petitioner had one year after the
Supreme Court issued a newly recognized rule of law.  Petitioner filed
within one year of the decisions in both Apprendi and Booker,
and both decisions are new rules of law issued by the Supreme
Court.

Also, Apprendi and Booker are new rules which are retroactively
available to habeas petitioners.  The Booker Court's remedial
holding is a substantive ruling which is retroactive.  Apprendi
and Booker's procedural holding is a watershed rule of criminal
procedure under the Supreme Court's retroactivity analysis.
Thus, Petitioner's habeas motion is timely filed.

III.

Petitioner's Fifth and Sixth Amendment rights were violated when
the district court increased his guideline sentencing range
based on facts not included in his guilty plea.  Petitioner
plead guilty to unarmed bank robbery but the district court
increased his sentence based on a factual finding that Petitioner
possessed a firearm during the robberies.  The court's factual
finding was a constitutionally impermissible basis for increasing
the maximum sentencing range because the fact was not included
in the guilty plea, nor proved to a jury beyond a reasonable
doubt.  Accordingly, the Court should grant § 2255 relief and
schedule a new sentencing hearing.

-6-

## ARGUMENT

**I.  PETITIONER IS ENTITLED TO FEDERAL RULE OF CIVIL PROCEDURE 60(b)(5) RELIEF FROM THIS COURT'S FINAL ORDER ENTERED IN A HABEAS CORPUS PROCEEDING ON THE GROUND THAT, DUE TO A SIGNIFICANT CHANGE IN DECISIONAL LAW, THE JUDGMENT IS NO LONGER EQUITABLE.**

In declaring Petitioner's habeas motion untimely, the district court held that it could not determine if the rule in Apprendi v. New Jersey, 530 U.S. 466 (2000), was retroactively available to Petitioner.  Instead, the court concluded that since the Supreme Court had not made Apprendi retroactive, Petitioner's habeas motion was barred by the one-year statute of limitations.  Hopwood, 122 F.Supp.2d at 1179-80.

### A:  There has been a significant change in law.

There has been a subsequent and significant change in circuit law regarding which court can make a new rule retroactive under the tolling provision of 28 U.S.C. § 2255 ¶6(3).  In fact, "[e]very circuit to consider this issue has held that a court other than the Supreme Court can make the retroactivity decision for purposes of § 2255(3)." Dodd v. United States, 365 F.3d 1273, 1278 (11th Cir. 2004).  See also, Ashley v. United States, 266 F.3d 671 (7th Cir. 2001);  United States v. Lopez, 248 F.3d 427 (5th Cir. 2001);  Garcia v. United States, 278 F.3d 1210 (11th Cir. 2002);  United States v. Swinton, 333 F.3d 481 (3rd Cir. 2003).  Other circuits have concluded the same, albeit in dicta.  See, Triestman v. United States, 124 F.3d 361 (2nd Cir. 1997);  Nelson v. United States, 184 F.3d 953 (8th Cir. 1999);  United States v. Valdez, 195 F.3d

-7-

544 (9th Cir. 1999). The Department of Justice has agreed
with these decisions in principle. See, Dodd, 365 F.3d at
1278 ("Neither party contends that § 2255(3) requires that
the retroactivity decision be made by the Supreme Court; rather,
any court may do so."). Among these circuit decisions, the
Ashley ruling is the one most comparable to Petitioner's case.

In Ashley, the defendant filed an initial § 2255 petition
that was beyond the one-year statute of limitations. The defendant
argued that his Apprendi claim was timely under the tolling
provision of § 2255¶6(3). However, the district court denied
the petition as untimely.

In reaching this decision, the district court drew on decisions
holding that an appellate court may authorize a second or successive
application under § 2255 ¶8(2) only if the Supreme Court itself
has made the retroactivity determination. The district court
determined that ¶8(2) and ¶6(3) were functionally identical
and held that the same approach applied to both. **1/**

The Seventh Circuit reversed the decision of the district
court. First, the court noted that the two provisions of §
2255 differ from each other. Compare, ¶8(2) ("made retroactive
to cases on collateral review by the Supreme Court"); with,
¶6(3) (a right "newly recognized by the Supreme Court and made
retroactively applicable to cases on collateral review"). Next,
the Seventh Circuit held that the distinctions between the

---

**1/** This is exactly what the district court did in this case.
See, Hopwood, supra, at 1079-80.

two provisions was meaningful to decide who can make the retroactivity analysis. The court stated that "District and appellate courts, no less than the Supreme Court, may issue opinions 'holding' that a decision applies retroactively" to cases on initial collateral review. Ashley, 266 F.3d at 673. The Ashley decision cannot be distinguished in any meaningful way from the instant case.

Although not every circuit has followed Ashley's holding, 2/ that possibility is now a virtual certainty. The Supreme Court recently granted certiorari in Dodd v. United States, No. 04-5286 (cert. gr. November 29, 2004). The question presented is:

> Does one-year limitations period under 28 U.S.C. § 2255 ¶6(3) begin to run (i) when either Supreme Court or controlling circuit court has held that relevant right applies retroactively to cases on collateral review (as Third, Fourth, Sixth, Seventh, and Ninth Circuit hold), or instead (ii) when Supreme Court recognizes new right, whether or not it is made retroactively applicable to cases on collateral review (as Fifth and Eleventh Circuits hold, and as Second and Eighth Circuits have stated in dicta)?

Of course, this question presumes the relevant holding in Ashley and progeny, are correct- in that district and appellate courts can make the retroactivity determination. Since the lower courts are unanimously in favor of this interpretation, no party in Dodd are even advancing a different view. See, Brief for the United States, (filed February 2, 2003)("Interpreting § 2255(3) to permit a newly recognized right to be made retroactive by any court, including the district court in which the motion is filed, better effectuates Congress' intent to provide defendants

---

2/  See, United States v. Hicks, 283 F.3d 380, 389 (D.C.Cir. 2002) (undecided on question);  Haugh v. Booker, 210 F.3d 1147, 1150 (10th Cir. 2000) (same).

with a one-year period in which to seek relief based upon a
Supreme Court decision recognizing a new right that is so fundamental
that it is retroacively applicable to cases on collateral review.");
Petition for a Writ of Certiorari, filed in the Supreme Court
on July 14, 2004 (not raising issue described here).  In Dodd,
the Court will either assume or implicitly hold that district
and appellate courts are authorized to make the retroactivity
determination before they even address the question presented.

    For all the above reasons, there has been a significant
change in law, which was previously unavailable, when this
Court denied Petitioner's § 2255 motion.

### B:   Federal District Courts have inherent authority to vacate civil judgment under Fed.R.Cv.P. 60(b).

    Rule 60(b) is the modern embodiment of the federal court's
inherent authority under Article III of the Constitution to
exercise "power over [their] own judgments," (United States
v. Ohio Power Co., 353 U.S. 98, 99 (1957)(per curiam)), including
the power to correct those judgments.  As such, the Rule "does
not provide a new remedy at all," but rather is "simply the
recitation of pre-existing judicial power," Plaut v. Spendthrift
Farm, 514 U.S. 211, 234-35 (1995).

    District Courts retain authority under Rule 60(b) to modify
judgments when changed circumstances have caused it to be unjust.
See, Klaprott v. United States, 335 U.S. 601, 614-15 (1949);
Keith v. Mullins, 162 F.3d 539, 540 (8th Cir. 1998).  As the
Supreme Court confirmed, the Rule "reflects and confirms the
court's own inherent discretionary power... to set aside a

-10-

judgment whose enforcement would work inequity." Plaut, 514
U.S. at 233-34.    Accordingly, federal district courts have
inherent authority to vacate civil judgments under Rule 60(b).

      **C:    The Supreme Court, as well as the Eighth Circuit,
has ruled that Rule 60(b)(5) authorizes relief from
judgment when the moving party shows a significant
change in decisional law.**

The Supreme Court has consistently held that Rule 60(b)(5)
authorizes relief from a civil judgment when the moving party
can show a significant change in decisional law.    See, Rufo
v. Inmates of Suffolk County Jail, 502 U.S. 367, 384 (1992);
Railway Employees v. Wright, 364 U.S. 642 (1961).    In fact,
Supreme Court jurisprudence squarely holds that a court errors
when it refuses to vacate a judgment in light of significant
changes in decisional law.    See, Wright, supra, at 647 ("[T]he
Court cannot be required to disregard significant changes in
law or facts if it is satisfied that what it has been doing
has been turned through changed circumstances into an instrument
of wrong.").    On this point Agostini v. Felton, 521 U.S. 203
(1997), is controlling.

In Agostini, the Supreme Court granted certiorari to determine
whether the petitioner was entitled to relief under Rule 60(b)(5)
from the operation of the district court's judgment entered
10 years earlier.    The petitioner asserted that the legal landscape
had changed since Aguilar v. Felton, 473 U.S. 402 (1985)- the
Supreme Court's decision which ultimately resulted in the judgment
under review- and as a result thereof, they were entitled to
relief from the operation of the judgment under Rule 60(b)(5).

-11-

After determining that the Establishment Clause jurispurdence had in fact significantly changed since <u>Aguilar</u>, the majority ruled that the change in law entitled petitioner to relief under Rule 60(b)(5).  <u>Agostini</u>, 521 U.S. at 237.  Thus, the decision in <u>Agostini</u> stands for the broad proposition that Rule 60(b)(5) authorizes relief from a civil judgment based on a significant change in decisional law.

Since <u>Agostini</u>, the Eighth Circuit has also consistently held that Rule 60(b)(5) authorizes relief based on changes of facts or relevant law.  See, <u>Tyler v. Murphy</u>, 135 F.3d 594, 595 (8th Cir. 1998); <u>Parton v. White</u>, 203 F.3d 552, 555 (8th Cir. 2000); <u>Mullins</u>, 162 F.3d at 540.  Therefore, this Court should accede to the use of Rule 60(b)(5) to obtain relief from a judgment based on a significant change in decisional law.

**D:  Rule 60(b)(5) relief applies equally in the habeas context.**

Rule 60(b) applies in habeas corpus cases.  The habeas jurisdiction is essentially an equity forum (see e.g., <u>Schlup v. Delo</u>, 513 U.S. 298, 319 (1995)), and it is inconceivable that courts exercising such jurisdiction would not have the inherent power traditionally possessed by all other courts to correct their own judgments to avert justice.  Nothing in the Anti-Terrorism and Effective Death Penalty Act (hereinafter "AEDPA") restricts this Court's authority to apply Rule 60(b)(5) in a habeas case. Instead, when enacting AEDPA, Congress crafted specific restrictions on the presentation of "second or successive" habeas applications, which are not applicable to Petitioner's case.  See, Section I, Part E, <u>infra</u>.  Indeed, because Rule 60(b) embodies the

-12-

federal court's inherent power under the Constitution to correct
erroneous or inequitable judgments, the suggestion that Congress
implicitly restricted the power in habeas cases would raise
a serious constitutional question.  See e.g., <u>Fierro v. Johnson</u>,
197 F.3d 147, 152 (5th Cir. 1999)(noting that 28 U.S.C. § 2244(b)(1)
pits against long-established inherent powers of the judiciary
to vacate fraudulently-obtained judgments in a prior habeas
proceeding).  Under the doctrine of constitutional avoidance
(see e.g., <u>INS v. St.Cyr</u>, 533 U.S. 289, 299-304 (2001)), AEDPA
could not properly be construed as imposing such a restriction
in the absence of an explicit statement to that effect.  AEDPA
contains no such thing.

    Although Rule 60(b) may not be applied so as to circumvent
the restrictions on second or successive habeas applications
(see e.g., <u>Boyd v. United States</u>, 304 F.3d 813, 814 (8th Cir.
2002)), the Rule indisputably applies in habeas.  That has
been the conclusion of a majority of the circuit courts that
have considered the question.  See, <u>Rodwell v. Pepe</u>, 324 F.3d
66, 70-71 (1st Cir. 2003);  <u>Rodriguez v. Mitchell</u>, 252 F.3d
191, 198 (2nd Cir. 2001);  <u>Wilson v. Fenton</u>, 684 F.2d 249,
251 (3rd Cir. 1982);  <u>Hunt v. Ruth</u>, 57 F.3d 1327, 1333 (4th
Cir. 1995);  <u>United States v. Rich</u>, 141 F.3d 550, 553 (5th
Cir. 1998);  <u>Dunlap v. Litscher</u>, 301 F.3d 873, 876 (7th Cir.
2002);  <u>Cornell v. Nix</u>, 119 F.3d 1329, 1332-1333 (8th Cir.
1997);  <u>Thompson v. Calderon</u>, 151 F.3d 918, 921 n.3 (9th Cir.
1998).  But see, <u>McQueen v. Scroggy</u>, 99 F.3d 1302, 1335 (6th
Cir. 1996)(equating all 60(b) motions as second or successive
habeas petitions under AEDPA).  Indeed, the Supreme Court has

inferentially supported that conclusion as well.  See also,
Abdur Rahman v. Bell, 537 U.S. __, 154 L.Ed.2d 501 (2002)(Stevens,
J., dissenting)("petitioner filed a proper Rule 60(b) motion...
seek[ing] relief from the final order entered by the federal
court in the habeas proceedings...").

     The Eighth Circuit, in an attempt to establish a uniform
procedure throughout the Circuit, has instructed district courts
to conduct an inquiry to determine whether a Rule 60(b) motion
is in fact, an unauthorized second or successive habeas petition.
Boyd, 304 F.3d at 814.  If the Rule 60(b) motion is a second
or successive habeas application, than a district court should
dismiss the motion.  Id.  However, the Court did not address
the procedure if a court determines that the 60(b) motion is
not a second or successive application.  Nonetheless, under
Nix, such a motion should be treated within the usual confines
of Rule 60(b).  See, Cornell v. Nix, 119 F.3d at 1332-1333.

     That conclusion makes good practical sense.  District
courts confront a wide variety of circumstances necessitating
modifications to their judgments in habeas corpus cases.  The
broad authority conferred by Rule 60(b) provides essential
flexibility to adapt to these circumstances.  To take the most
obvious examples, it cannot reasonbly be disputed that a district
court cannot modify or reverse a judgment that was a mistake
(60(b)(1)), or a judgment that rested on outright fraud (60(b)(3)).
Even those not so obvious, for example, the intended use of
Rule 60(b)(5) in this proceeding to grant relief due to a significant
change in decisional law, have been authorized by both the

                              -14-

appellate courts and the Supreme Court.  See, <u>Materese v. Le Fevre</u>,
801 F.2d 98, 106-108 (2nd Cir. 1986); <u>Wilson v. Fenton</u>, 684 F.2d
249, 251 (3rd Cir. 1982); <u>Cornell v. Nix</u>, 119 F.3d at 1332-33.
See also, <u>Agostini</u>, <u>supra</u>; <u>Abdur Rahman</u>, <u>supra</u>, 154 L.Ed.2d at
506 (Stevens, J., dissenting).

There is no reason why this Court should hold otherwise.
The Supreme Court's decision in <u>Agostini</u>, and the court of appeals'
consistent use of Rule 60(b) in habeas cases are sufficient authority
to justify Rule 60(b)(5) relief when a party can show a significant
change in law.

> **E:  Petitioner's request for a merits adjudication of his
> <u>Apprendi</u> claim is not a "second or successive" habeas application.**

The Supreme Court has authoritatively rejected the mechanical
application of an iron-clad rule equating motions filed under
Rule 60(b) with a sucessive habeas application- the notion that
a federal habeas petitioner's second attempt to secure relief
on a previously presented claim is <u>eo ipso</u> a "successive application,"
within 28 U.S.C. § 2244 even when the claim was not adjudicated
on the merits at the first attempt.  On this point, <u>Stewart v.
Martinez-Villareal</u>, 523 U.S. 637 (1998), and <u>Slack v. McDaniel</u>,
529 U.S. 473 (2000), are controlling.  In both cases, a federal
habeas corpus court declined to reach the merits of a constitutional
claim on a procedural ground, and the Supreme Court held that
a habeas applicant's renewed effort to obtain a single merits
adjudication could not be turned away as "second or successive."

-15-

In Stewart, the federal district court had initially granted
Martinez-Villareal habeas relief on one claim but dismissed another
claim- that he was incompetent to be executed under Ford v. Wainwright,
477 U.S. 399 (1986)- as premature.  The Court of Appeals reversed
the grant of relief.  Subsequently, Martinez-Villareal filed a
motion in the district court "to reopen his Ford claim," which
the district court held to be an impermissible "second or successive"
petition.  The Supreme Court ruled that the district court had
errored in so doing.  Specifically, the Court rejected the position
that, because Martinez-Villareal "already had one fully-litigated
habeas petition, the plain meaning of § 2244(b) as amended requires
his new petition to be treated as successive."  523 U.S. 643.
The error in this position, the Court explained, was its failure
to recognize that "the only claim on which [Martinez-Villareal]... now
seeks relief is the Ford claim that he presented to the District
Court, along with a series of other claims, in [his original habeas
application]."  Id.  As the Court noted: "This may be the second
time that respondent had asked the federal courts to provide relief
on his Ford claim, but this does not mean that there were two separate
applications, the second of which was nessarily subject to § 2244(b)."
Id.  The Court thus distinguished the case before it from "the
situation where a prisoner raises a Ford claim for the first time
in a petition filed after the federal courts have already rejected the
prisoner's initial habeas application."  Id at 645 (underscores added).

The Court in Stewart found particularly persuasive an anology to
the proper treatment of habeas applications that are dismissed
for failure to exhaust state remedies, then re-filed following

exhaustion.  In that circumstance, the subsequently filed petition is
not "successive."  523 U.S. at 644.  The Court concluded that
a claim previously dismissed on procedural grounds "should be
treated in the same manner as the claim of a petitioner who returns
to a federal habeas court after exhausting state remedies."  Id.
The critical factor for the Court was that "in both situations,
the habeas petitioner does not receive an adjudication of his
claim.  To hold otherwise would mean that a dismissal of a first
habeas petition for technical reasons would bar the prisoner from
ever obtaining federal habeas review."  Id at 645.

Slack posed the precise case that Stewart had contemplated
analogically.  Slack's 1991 federal habeas petition was dismissed
for non-exhaustion.  After exhausting his state remedies, Slack
filed a numerically second habeas petition in 1995:

> "The District Court dismissed claims Slack failed to raise
> in his 1991 petition based on its conclusion that Slack's
> 1995 petition was a second or successive habeas petition.
> This conclusion was wrong.  A habeas petition filed in the
> district court after an initial habeas petition was unadjudicated
> on it merits and dismissed for failure to exhaust state remedies
> is not a second or successive petition."

Slack, 529 U.S. at 485-86.  It is true that Slack was decided
under pre-AEDPA law.  But Slack's reliance on the authority and
reasoning of Stewart, coupled with Slack's express statement that
"we do not suggest the definition of second or successive would
be different under AEDPA," 529 U.S. at 486, makes it quite clear
that Slack would have reached the same conclusion under AEDPA.
And of course, the very statutory text of AEDPA points to this
conclusion:  Congress consistently distinguished between "claims"
and "applications" and proscribed only successive "applications;"

-17-

which is to say by necessary implication that a habeas petitioner's presentation of a "claim" on two occassions does not, without more, trigger the provisions of a second or successive petition under § 2244.

To categorically hold that every Rule 60(b) motion must be treated as a successive application within § 2244(b) would mean that no motions for relief from a habeas judgment can ever be granted, even though the judgment was entered through mistake, fraud, or any other fundamental miscarriage of justice that invoke the traditional power or courts "to vacate judgments whenever such action is appropriate to accomplish justice." Klaprott v. United States, 335 U.S. 601, 615 (1949).

Nothing in the text or legistlative history of AEDPA suggests that Congress intended to produce such an impratical result. To the contrary, Congress legistlated AEDPA against the backdrop of the Supreme Court's consistent recognition that a federal court's failure to consider claims presented in an initial habeas petition "is a particularly serious matter," for it requires denying the "petitioner the protections of the Great Writ entirely, risking injury to an important interest in human liberty." Lonchor v. Thomas, 517 U.S. 314, 324 (1996). Due to the "importance of a first federal habeas petition," the Supreme Court has made clear that "it is particularly important that any rule that would deprive inmates of all access to the writ should be both clear and fair." Id. at 330. AEDPA cannot be supposed to have upset these traditional underpinnings sub silentio. Under AEDPA, the writ of habeas corpus still plays a vital role in protecting constitutional rights, and "[C]ongress expressed no intention to allow trial court procedural error to bar vindication of substantial constitutional rights..." Slack, 529 U.S. at 483.           -18-

It is this approach, and the appropriate construction of
AEDPA, that, so long as a petitioner's claims are entirely set
forth in his initial "application," and he does not seek to raise
a new constitutional "claim," "[t]here [is] only one application
for habeas relief" (Stewart, 523 U.S. at 633-34), and Rule 60(b)
consideration is available because the petitioner in those circumstances
asks only that the district court grant the original "application" in
light of "changes in the... legal landscape." Agostini, 521 U.S.
at 215.  See also, Tal v. Miller, 1999 WL 38254, at *2-*4 (S.D.
N.Y. Jan. 27, 1999)(granting prisoner's 60(b) motion to vacate
prior judgment dismissing habeas petition because "[i]t was dismissed
on the basis of a procedural bar which the Court of Appeals has
now determined was an incorrect reading of AEDPA... [and] [g]iven
the important interest at stake, the petitioner should have the
opportunity to present his substantive claims to a federal court.").

Against this backdrop, Petitioner's request for Rule 60(b)
relief is not a second or successive habeas application.  Petitioner
is not raising a new "claim" or presenting a new "application."
Instead, Petitioner asks this Court to reconsider its ruling-
based on the proper interpretation of § 2255 ¶6(3)- that his original
habeas motion was or is, now timely under the tolling provision
of § 2255.  Moreover, Petitioner's Apprendi claim- which was raised
in the original petition- was never decided on the merits.  Accordingly,
this motion is not an unauthorized second or successive petition,
and this Court may grant Rule 60(b) relief.

-19-

**F:  The Judgment Denying Petitioner's original habeas motion is no longer equitable.**

The district court's judgment is no longer equitable and therefore, Rule 60(b) relief is appropriate.  First, the district court denied Petitioner's § 2255 motion as untimely based on an erroneous interpretation of the tolling provision contained in § 2255 ¶6(3).  Subsequently, a majority of the circuit courts have determined that this ruling is inconsistent with their interpretation of the statute.  Second, this change in law occurred after the initial habeas application was filed, and thus, it was impossible for Petitioner to present this precedent at that time.  Third, although this change in law was previously unavailable, nonetheless, Petitioner did present the argument- that the district court could make the retroactivity determination itself- in his original habeas petition.  Fourth, the district court's ruling and interpretation of § 2255 ¶6(3) had the effect of procedurally barring Petitioner from obtaining a merits review of the Apprendi claim.  And lastly, the change in law would not be barred from being presented in a habeas application under the non-retroactivity doctrine of Teague.  See, Bousley v. United States, 523 U.S. 614, 620 (1998)("Teague by its terms applies only to procedural rules" and accordingly, is categorically "inapplicable to the situation in which this Court decides the meaning of a criminal statute enacted by Congress.").  Accordingly, this Court should grant Rule 60(b) relief in this case.

In the alternative, Petitioner asks this Court to treat this motion in the "same manner as a state petitioner who returns to a federal habeas court after exhausting state remedies." Stewart, 523 U.S. at 644.  See also, Slack, 529 U.S. at 485-486.  The same reasons that justify Rule 60(b) relief, also justify this Court to construe this motion as an initial § 2255 petition.

II.

## UNDER THE TOLLING PROVISION OF § 2255 ¶6(3), PETITIONER'S MOTION IS TIMELY FILED.

Petitioner's habeas motion was, and is, timely filed under the limitation period contained in § 2255 ¶6(3). Both <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), and <u>United States v. Booker</u>, 543 U.S. __ (2005), are newly recognized rights by the Supreme Court, which are retroactively available to cases on collateral review. Also, Petitioner has filed within one year of both <u>Apprendi</u> and <u>Booker</u>.

The tolling provision of § 2255 ¶6(3) establishes a one-year limitation period during which litigants must file their motions. There are three componets to subsection (3): the starting date of the limitations period runs from (1) the date when the Supreme Court "initially recognized" the right asserted; (2) if the Supreme Court has "newly recognized" that right; and (3) the right "has been made retroactive to cases on collateral review." Petitioner will address these componets in turn.

### A:  Initially recognized decisions of the Supreme Court.

The construction of the first componet seems clear: it requires a district court to commence counting the one-year period from the date on which the right was "intially recognized by the Supreme Court." This componet provides no problem for Petitioner. The Supreme Court decided <u>Apprendi</u> on June 26, 2000, and Petitioner filed his § 2255 application on September 22, 2000. The Court decided <u>Booker</u> on January 12, 2005, and Petitioner has filed this motion within one year of that decision.

Thus, Petitioner has satisfied the first componet.

-22-

**B:  Apprendi and Booker are newly recognized rights.**

The second componet, "if the right has been newly recognized
by the Supreme Court," seems to underscore the requirement
that the claims raised in the habeas motion must involve a
new rule and reinforces the condition that the time limitation
is extended only to include rights not previously in existence.

Once again, this componet poses no problem for the issue
raised in this motion.  The Eighth Circuit has previously held
that the Apprendi decision is a new rule.  United States v.
Moss, 252 F.3d 993, 998 (8th Cir. 2001)("[A]pprendi announces
a new rule.").  Furthermore, the Supreme Court described the
rulings in Booker as rules which must be applied retroactively
to cases on direct appeal, even though the rules constitute
a "clear break from the past."  Booker, 543 U.S. __, slip op.,
at 25 (2005)(citing Griffith v. Kentucky, 479 U.S. 314, 328
(1987)).  Apprendi and Booker unquestionably altered the legal
landscape and are easily categorized as new rules or newly
recognized rights.

**C:  Apprendi and Booker are retroactively applicable to
     habeas petitioners.**

As stated above, this Court must make the retroactivity
determination of Apprendi and Booker.  The retroactivity anaysis
of Teague v. Lane, 489 U.S. 299 (1989), governs here.  But
first, a review of the rules announced in both cases is required.

-23-

### (1)  Apprendi and Booker.

In Apprendi, the defendant pleaded guilty to second-degree possession of a firearm for an unlawful purpose, which carried a prison term of 5-10 years.  Thereafter, the trial court found that his conduct had violated New Jersey's hate crime law because it was racially motivated, and imposed a 12-year sentence. The Court set aside the enhanced sentence.  The Apprendi Court held:  "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  Apprendi, 530 U.S. at 490.

The Apprendi holding sought to vindicate two fundamental constitutional rights.  Namely, the Sixth Amendment right to "demand that a jury find [a defendant] guilty of all the elements of the crime with which he is charged."  United States v. Gaudin, 515 U.S. 506, 511 (1995).  And the Fifth and Fourteenth Amendment rights "against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  In re Winship, 397 U.S. 358, 364 (1970).

Subsequent decisions of the Supreme Court reaffirmed the rule first handed down in Apprendi.  In Ring v. Arizona, 536 U.S. 584 (2002), the Court found that it was impermissible for a judge to determine the presence or absence of aggravating factors required for imposition of the death penalty.  The Ring Court made clear that "[i]f a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact... must be found by a jury beyond a reasonable doubt." Ring, 536 U.S. at 602.  In Blakely v. Washington, 542 U.S. __

(2004), the application of Washington's guideline sentencing scheme, the Court held, violated the defendant's right to have a jury find beyond a reasonable doubt the existence of all facts that the law makes essential to the punishment." Blakely, supra, slip op., at 5). The Court then clarified that the statutory maximum for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of facts reflected in the jury verdict or admitted by defendant. Id. slip op., at 7.

In Booker, the Court was asked to determine whether the reasoning of Blakely applied to the federal sentencing guidelines, and if so, what remedy was required to insure comformaty with the Constitution. The Booker Court recognized that there was no distinction of constitutional significance between the Federal Guidelines and Washington's sentencing system, and therefore, judicial factfinding by a preponderance under the Guidelines violated the rule of Apprendi. Booker, slip op., at 8, 19. This answer, the Court noted, was motivated by a need to preserve Sixth Amendment substance. Id. at 12. In answering the second question, the Court concluded the remedy, compatible with the constitutional holding, was to excise two statutory provisions which makes the Guidelines mandatory. Id. at 22. Specifically, the Court invalidated: (1) 18 U.S.C. § 3553(b)(1), which requires district courts to impose a sentence within the applicable Guideline range; and, (2) 18 U.S.C. § 3742(e), which set forth the standard of review for criminal defendants appealing their sentences under the Guidelines. Id. The effect of the invalidation, made the Guidelines advisory only, instead of mandatory. Id.

-25-

The Booker Court issued two holdings or rules.  The first
defined the scope of the jury trial and reasonable doubt provisions
of the Constitution.  The second established a remedial holding
which declared that two statutes were facially unconstitutional.

The question for this Court is whether the Apprendi rule
or the rules established in Booker are retroactively available
to petitioners on collateral review.  The answer to that question
lies in the retroactivity analysis of Teague v. Lane, 489 U.S.
288 (1989).

### (2)  Teague's retroactivity analysis

In Teague, a plurality of the Supreme Court adopted a new
approach to the retroactive application in habeas corpus proceedings
of newly announced legal rules.  **3/**  Following Justice Harlan's
approach in Mackey v. United States, 401 U.S. 667, 675 (1971)
(Harlan, J., concurring in part and dissenting in part), the
Court stated that generally, new constitutional rules of criminal
procedure will not apply retroactively to cases that were final
when the new rule was announced.  Teague, 489 U.S. at 310.

In Teague and subsequent cases, the Court established a
three-step inquiry for determining when new rules apply retroactively
on collateral review.  First, a court must determine the date
on which defendant's conviction became final.  **4/**  Second, a

---

**3/**   The Teague doctrine has been ratified by the Court on a number
of occasions since Teague.  See e.g., Gray v. Netherland, 518 U.S. 152
(1996);  Sawyer v. Smith, 497 U.S. 227 (1990); Penry v. Lynaugh,
492 U.S. 302 (1989).
**4/**   Petitioner concedes that his conviction became final before
Apprendi and Booker were announced.

court must decide whether the Supreme Court's new ruling is a substantive ruling or a rule of constitutional criminal procedure. <u>Schriro v. Summerlin</u>, 2004 WL 1402732, at *3-*4 (U.S. 2004). Third, a new procedural rule may nonetheless apply retroactively it if falls within one of two narrow exceptions to <u>Teague</u>'s general rule barring retroactivity. <u>Summerlin</u>, at *3.

### (3)  Booker's remedial holding is a substantive decision which is retroactively available on collateral review

Continuing to follow Justice Harlan, <u>Teague</u> and later <u>Summerlin</u>, identified the types of rules that fall within the first exception of <u>Teague</u>. The <u>Summerlin</u> Court noted that new substantive rules generally apply retroactively. <u>Summerlin</u>, at *3. "This includes decisions that narrow the scope of a criminal statute by interpreting its terms, as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish." <u>Id</u>. (citation omitted). Such rules apply retroactively because they "necessarily carry a significant risk that a defendant... faces a punishment that the law cannot impose upon him." <u>Id</u>. (citations omitted).

Explaining the first exception, Justice Harlan stated that "[t]here is little societal interest in permitting the criminal process to rest at a point where it ought properly never to repose." <u>Mackey</u>, 401 U.S. at 692. Justice Harlan's opinion makes clear that one historic purpose of the Great Writ- which he sought to preserve in the first exception- was to free individuals who were convicted or sentenced under an unconstitutional statute.

-27-

Id. at 692-93 n.8 (citing Ex Parte Siebold, 100 U.S. 371 (1880)).
Indeed, a criminal statute invalidated as unconstitutional subsequently
renders a conviction or sentence under that statute as void ab
initio.  See e.g., Siebold, 100 U.S. at 376-77 ("An unconstitutional
law is void, and is as no law.  An offense created by it is not
a crime.  A conviction under it is not merely erroneous, but
is illegal and void and cannot be a legal cause of impairment.");
Chicago, I. & L.R. Co. v. Hackett, 228 U.S. 559, 566 (1913)
(unconstitutional statute "was... as inoperative as if it had
never been passed").  Since the Booker decision invalidated acts
of Congress which made the Guidelines mandatory, the decision
also rendered all sentences conducted upon those statutes as
not just erroneous, but legally void.

The Supreme Court acknowledged as much in Booker.  After
issuing their remedial holding, the Court had to apply it to
the two defendants (Booker and FanFan).  With regard to FanFan,
the Court noted that his sentence did not violate the Sixth Amendment.
Booker, slip op., at 45.  Nonetheless, the Court vacated the
sentence.  Id.  That the Court chose this route is illustrative
of the nature of their remedial holding.  Although FanFan was
sentenced to the guideline range based solely on the jury's verdict,
the sentence was still unlawful because the district court sentenced
FanFan under the mandatory guideline system, a system the Court
had already declared as void based on constitutional grounds.

When a rule renders a statute as unconstituional and a conviction
or sentence as void ab initio, the rule should be applied retroactively.
See, United States v. Johnson, 457 U.S. 550 (1981); American

Trucking Assns. v. Smith, 496 U.S. 167, 201 (1990)(Scalia, J.,
concurring).  Although the Court has not, post-Teague, been faced with
determining the retroactive application of a rule rendering a
sentence as void, the Court has concluded that certain penalty-
focused substantive decisions are necessarily retroactive.

The Court, in Furman v. Georgia, 408 U.S. 238 (1972), held
that the Eighth Amendment precluded the imposition of the death
penalty under the Georgia statutes at issue in the case. In Penry v.
Lynaugh, 492 U.S. 302 (1989), the Court held as a substantive
matter that the execution of a mentally-retarded person amounted
to cruel and unusual punishment.  Neither Furman or Penry altered the
range of conduct or narrowed the scope of a criminal statute.
Instead, the rules merely restricted the application of a particulur
punishment.  Nonetheless, the Court has cited Furman and Penry
as paradigmatic examples of substantive rulings which justify
retroactive application.  Johnson, 457 U.S. at 550;  Penry, 492
U.S. at 329-30.

Judged by these standards, Booker's remedial holding is properly
classified as substantive.  The Booker Court held that the statutory
provisions making the Guidelines mandatory were facially unconstitutional
and had to be excised.  As a simple matter, the invalidation
of two statutes thereby "[a]ffect[ed] the substance of criminal
laws."  United States v. Sood, 969 F.2d 774, 776 (9th Cir. 1992).
The effect of invalidation here, led to a holding that the Guidelines
are "effectively advisory" (Booker, slip op., at 22), and any

-29-

defendant who was sentenced under the mandatory guidelines system faced a punishment that the law could not "impose upon him," (Summerlin, supra, at *3).  Although common sense dictates that Booker's remedial holding should be appropriately characterized as a substantive ruling, one other point ineluctably leads to the same conclusion.

That the change in sentencing law resulting from the Booker Court's remedial holding, constitutes a substantive ruling can be seen from examining the Court's holdings in other contexts. For example, under the Supreme Court's Ex Post Facto jurisprudence, a violation occurs inter alia, if the change in law is substantive rather than a mere procedural change.  Dobbert v. Florida, 432 U.S. 282, 293-94 (1977).  On this point Miller v. Florida, 482 U.S. 423 (1987), provides authoritative proof that the change in sentencing law here, constitutes a substantive change in law which must be applied retroactively.

In Miller, the defendant argued that a change in the presumptive guideline range under Florida's sentencing laws violated the Ex Post Facto Clause of the Constitution.  The Supreme Court, acting unanimously, held that the change in Florida's Guidelines violated the Constitution.  Relevant to this case, was the Court's determination of whether the change in law was substantive rather than a procedural change.

-30-

    In reviewing the change in Florida's guideline system,
the Miller Court concluded that the change altered substantial
rights of the defendant.  Miller, 482 U.S. at 433.  Because
the change in law increased the quantum of punishment, the change
had "[l]ittle about it that could be deemed procedural."  Id.
The State of Florida argued that the change in the guidelines
operated only as a "procedural guidepost" for the sentencing
court's exercise of discretion within the same statutory imposed
sentencing limits.  The Court rejected this contention because
the statute at issue (1) was a law enacted by the Florida legistlature
and had the force and effect of law; (2) required that a sentencing
judge was bound by strict standards from departing from the
presumptive guideline range; and, (3) directly and adversly
affected the sentence the defendant receives.  Id. at 435.

    The change from a mandatory guideline system to an advisory one
cannot be differentiated from the change in Miller.  First,
the previously required guideline ranges changed and increased
the quantum of punishment for all federal offenses.  See, Booker,
slip op., at 2 n.3 (Scalia, J., dissenting) ("Although the Guidelines
took pre-existing sentencing practices into account, they are
a product of policy decisions by the Sentencing Commission-
including, for instance, decisions to call for sentences 'significantly
more severe than past practices' for the 'most frequently sentenced
offenses in the federal courts.'")(citing United States Sentencing
Commission, Fifteen Years of Guideline Sentencing xvi (Nov.
2004), at 47)(emphasis omitted).  In effect, the guideline ranges
established new minimum and maximum penalties within the statutory

-31-

range.  Second, the mandatory guidelines imposed "binding" sentencing
ranges on courts and had "[t]he force and effect of laws."
Booker, slip op., at 9.  In addition, the mandatory system did
not simply provide "procedural guideposts" for use in the exercise
of discretion within the statutory range.

Instead, the mandatory guidelines created "a high hurdle
that must be cleared before discretion [could] be exercised."
Miller, at 435.  The mandatory system only allowed a departure
from the guideline range when there existed a circumstance not
adequately taken into consideration by the Sentencing Commission.
See, 18 U.S.C. § 3553(b)(1).  This statute mandated that departures
were, for the most part, unavailable.  See, Booker, slip op.,
at 10.  In most instances, the sentencing court was only allowed
discretion after the relevant guideline range was calculated.

Finally, the mandatory guidelines as compared to an advisory
system, adversely affects the sentence a defendant receives.
The Sentencing Commission concluded that no departures were
warranted for: age, education, mental condition, drug dependency,
employment record, family ties, military contributions, and
post-conviction rehabilitation.  See, U.S.S.G. Chapter 5, Part
H.  The current sentencing system allows a defendant to argue
these mitigating factors to a sentencing court in actually setting
the sentence, rather than just imposing a sentence within the
previously determined guideline range.  Judicial factfinding
is another example of adverse effects.  Under the old system,
judges routinely found facts- which were not charged, nor proven to
a jury beyond a reasonble doubt- that required an increase to

-32-

an applicable guideline range.  Although the current system
allows judges to consider non-charged and non-proven facts,
a judge is not bound to impose a certain sentence based on these
facts.  It is not a stretch to conclude that some courts will
not impose the harsh penalties associated with so-called relevant
conduct, which violates in principle, the Booker Court's constitutional
procedural holding.  In any event, the adverse consequences
of the mandatory guideline system, and the subsequent change
to advisory guidelines is virtually identicle to the change
which the Court in Miller, characterized as substantive.

There is no question the remedial holding announced in
Booker, constitutes a substantive change in federal sentencing
law.  It is equally without question that this holding must
be applied retroactively to petitioners on collateral review.

**(4)  Apprendi and Booker's procedural holdings are "watershed"
rules of criminal procedure which justify retroactive
application.**

A new rule should be applied retroactively if it is a "watershed"
ruling that "requires the observance of those procedures that... are
implicit in the concept of ordered liberty."  Teague, 489 U.S.
at 307.  Such watershed rules are those that: (1) implicate
the "fundamental fairness" of criminal proceedings; and, (2)
an absence of the rule "seriously diminishes" the accuracy of
a conviction or sentence.  Schriro v. Summerlin, 2004 WL 1402732,
at *3, *5 (U.S. 2004).  Few new rules can meet the Teague criterion,
but the rule announced in Apprendi and Booker happens to be
one of them.

-33-

The Apprendi rule is two-fold.  First, any fact which is legally essential to the punishment must be found solely by a jury.  Second, this jury determination must be made beyond a reasonable doubt.  Apprendi, 530 U.S. at 477.  The latter holding- that the Due Process Clause protects a defendant against conviction except upon proof beyond a reasonable doubt- qualifies as  a watershed rule of criminal procedure.

The right to have a jury verict based upon proof beyond a reasonble doubt is a procedural element essential to the fairness of trials and sentences.  The Apprendi Court labeled the right as one of "surpassing importance' and noted that its genesis could be traced back to the common law.  Apprendi, 530 U.S. at 476, 478.  The reasonable doubt standard provides "concrete substance for the presumption of innocence- that bedorck axiomatic and elementary principle whose enforcement lies at the foundation of the administration of our criminal law."  In re Winship, 397 U.S. 358, 363 (1970)(citing Coffin v. United States, 156 U.S. 432, 453 (1895)).  Because the right "[r]eflects a profound judgment about the way in which law should be enforced and justice administered," Apprendi, at 478 (citation omitted), any violation of the right deprives a criminal defendant of a basic protection "without which a criminal trial cannot reliably serve its function," Sullivan v. Louisiana, 508 U.S. 275, 281 (1993).

Apprendi and by the same token Booker, undoubtedly altered our understanding of this "bedrock procedural element" by requiring it to applied to certain facts that previously were subject to a preponderance of the evidence standard only.  Before Booker

-34-

federal district courts increased sentences based on factual findings
proved by only a preponderance, and these increases were "serious
indeed." Booker, slip op., at 12 (citing pre-Booker examples of
severe sentencing increases under the Guidelines). Under the mandatory
guideline system, a criminal defendant was "at a severe disadvantage,
a disadvantage amounting to a lack of fundamental fairness, if he
could be adjudged guilty and imprisoned for years on the strength
of the same evidence as would suffice in a civil case." Winship,
397 U.S. at 363 (citation omitted). A rule which requires adherence
of proof beyond a reasonable doubt can and must implicate fundamental
fairness.

     Although the Eighth Circuit has previously held that Apprendi
is not a "fundamental rule," United States v. Moss, 252 F.3d 993
(8th Cir. 2001), that decision can and should be reconsidered by
this Court. Generally, district courts cannot revisit holdings
of a higher court due to the law of the case doctrine. The doctrine
provides that "when a court decides upon a rule of law, that decision
should continue to govern the same issues in subsequent stages
in the same case." Arizona v. California, 460 U.S. 605, 618 (1983).
However, the law of the case is a doctrine of discretion and not
a command to the courts. Id. Thus, the Eighth Circuit has determined
that the law of the case doctrine would not preclude another court
from reconsidering an issue in a habeas petition, if a prior decision
was clearly erroneous and works a manifest injustice. See e.g.,
United States v.Serpa, 930 F.2d 639, 640 (8th Cir. 1991); English
v. United States, 998 F.2d 609, 612 (8th Cir. 1993). See also,
Lair v. Oglesby, 14 F.3d 15, 17 (8th Cir. 1993)(civil case).

-35-

In _Moss_, the Eighth Circuit held that the rule handed down in _Apprendi_ was not a watershed rule of criminal procedure. Specifically, the court found that _Apprendi_ was not a fundamental procedure which implicates fairness. _Moss_, 252 F.3d at 999. However, the decision in _Moss_ was decided before the Supreme Court elaborated and clarified the _Apprendi_ rule. Due to an intervening change or clarification in law this Court can reconsider _Moss_.

First, because judge-found facts only affected a sentence imposed after a valid conviction, the _Moss_ court concluded that even if those facts were found under a more lenient standard, it could not be said to have resulted in an unfair proceeding. The court then noted that "one can easily envision a system of ordered liberty in which certain elements of a crime can or must be proved to a judge, not to the jury." _Moss_, 252 F.3d at 999. Much of this anaysis is not an application of _Teague_, but a rejection of _Apprendi_. The _Booker_ Court clearly could not envision such a system even though it was Congressionally enacted and authorized. Indeed, for the _Booker_ Court to declare the mandatory guideline system as facially unconstitutional, it had to implicitly recognize that judge-found facts by a preponderance, which increased the maximum sentence, were repugnant to the Constitution. See _Supra_, at 28 . In justifying these statements, the _Moss_ court emphasized that defendants were still able to challenge their presentence investigation reports and judge-made findings at a sentencing hearing, therefore their sentences were not unfair. _Moss_, at 999-1000 n.7. But this is the same argument that the _Blakely_ and _Booker_ Courts rejected in applying _Apprendi_ to guideline sentencing systems. See _Blakely_,

-36-

slip op., at 15 (Evaluating Apprendi's "fairness" and concluding
that judge-found facts which increased the maximum sentence are
unfair when those facts are extracted "after trial from a report
compiled by a probation officer who the judge thinks more likely
got it right than got it wrong.").

Second, the Moss Court noted that under Apprendi judge-found
facts could still increase a sentence under the guidelines, thereby
rebutting any argument that Apprendi was a fundamental rule. Moss,
at 1000.  Once again, the Eighth Circuit failed to grapse the reach of
Apprendi.  As Booker made explicit, Apprendi unequivocally applies
to factfinding under the Guidelines.

If the Eighth Circuit were to determine today, whether Apprendi
equated a rule of fundamental fairness, the answer would likely
be different.  The Moss Court's erroneous interpretation of the
rights contained in Apprendi and the Court's failure to regard
the Supreme Court's consistent holdings that deprivation of proof
beyond a reasonable doubt is incompatible with a fair trial, mandate
a different result.  However, although Apprendi is a fundamental
right, it must also enhance the accuracy of trials and sentences.

It is beyond peradventure that factfinding conducted upon
proof beyond a reasonable doubt, rather than by a preponderance,
enhances the accuracy of convictions and sentences.  The Supreme
Court has stated that the reasonable doubt standard "[i]s a prime
instrument for reducing the risk of convictions resting on factual
error."  Winship, 397 U.S. at 363.  Furthermore, it is "indispensable,
for it impresses on the trier of fact the necessity of reaching
a subjective state of certitude on the facts in issue."  Id. at
364.  Since the denial of the right to a jury verdict of guilt

-37-

beyond a reasonable doubt deprives a criminal defendant of a "basic
protection... without which a criminal trial cannot reliably serve
its function," Sullivan, 508 U.S. at 281, it must also "diminish
the likelihood of obtaining an accurate conviction," Teague, 489
U.S. at 315.

In the past, the Supreme Court has given retroactive effect
to rules similar to Apprendi and Booker.  In Ivan v. City of New
York, 407 U.S. 203 (1972), the Court held the Winship rule retroactively
available to habeas petitioners.  In so holding, the Court stated
that "[w]here a major purpose of new constitutional doctrine is
to overcome an aspect of the criminal trial that substantially impairs
its truth-finding function and so raises serious questions about
the accuracy of guilty verdicts in past trials, the new rule has
been given complete retroactive effect." Ivan, 407 U.S. at 204.
The Court in Hankerson v. North Carolina, 432 U.S. 223 (1977),
was asked to decide if the rule expressed in Mullaney v. Wilbur,
421 U.S. 684 (1975), was retroactive.  The Hankerson Court followed Ivan
and declared that "the reasonable doubt standard of proof is as
substantial a requirement under Mullaney as it was in Winship.
Hankerson, 432 U.S. at 243-44.

Although Ivan and Hankerson were pre-Teague, the Court's germane
reasoning rested on the same standards the Teague Court later adopted
as qualifications for the watershed exception.  See and compare,
Ivan, 407 U.S. at 204-205 (an absence of the rule would substantially
impair the truth-finding function and raised serious questions
about accuracy); with, Teague, 489 U.S. at 311-312 (new rule must

-38-

implicate fundamental fairness and enhance accuracy). In the end, the Court believed that new rules mandating proof beyond a reasonable doubt justified retroactive application.

The procedural holdings of Apprendi and Booker justify the same result. Before Booker, a criminal defendant was denied factfinding by a reasonable doubt to all facts under the Guidelines, even though the facts were functional elements and legally essential to the punishment imposed. By contrast, the Mullaney rule only applied to one fact- an affirmative defense to reduce homicide to manslaughter. Also, unlike Winship and Mullaney, a Booker violation deprives a defendant of any jury finding. Thus, the Booker rule is just as important as the rules expressed in Mullaney and Winship. The Court's recent decision in Summerlin is synanomous with the the view that the Booker rule should be considered a "watershed" rule.

In Summerlin, the Court rejected the contention that the jury requirement for the sentencing factor in Ring was a "watershed" rule demanding retroactive application. Addressing that exception, the Court stated "[t]hat a new procedural rule is fundamental in some abstract sense is not enough; the rule must be one without which the likelihood of an accurate conviction is seriously diminished." Summerlin, supra, at *5. The Summerlin Court went on to hold that the jury requirement did not meet this standard: "When so many presumably reasonable minds continue to disagree over whether juries are better factfinders at all, we cannot confidently say that judicial factfinding seriously diminishes accuracy." Id.

The Summerlin Court, however, did not address whether a rule requiring factfinding beyond a reasonable doubt qualifies as a

-39-

watershed rule.  It could not because in <u>Ring</u>, the aggravating
fact necessary for the death penalty had to be found beyond a reasonable
doubt, albeit by a judge.  <u>Summerlin</u>, at *2 n.1.  Unlike the jury
trial guarantee, the Due Process right to proof beyond a reasonable doubt
implicates fundamental fairness and enhances accuracy.

     Also, Guideline factfinding by a preponderance has been questioned
by "presumably reasonable minds" since the advent of the Guidelines.
Commentators have expressed concerns about allowing judges to find
Guideline enhancements and especially the use of the preponderance
standard in making these findings. <u>5</u>/  Moreover, jurists have been
critical of the application of the preponderance standard to findings
of relevant conduct under the Guidelines.  <u>6</u>/  Guideline factfinding,
which promised to bring order and rationality to sentencing, has
instead brought inconsistency and disproportionality which "seriously
diminishes accuracy" of federal sentences.

     Simply put, the twin purpose of <u>Apprendi</u> and <u>Booker</u>- providing
Sixth Amendment substance and protecting a defendant's right to
proof beyond a reasonable doubt- qualifies for retroactive application
under <u>Teague</u>'s watershed exception.

<hr>

<u>5</u>/  See e.g., Martin, The Cornerstone Has No Foundation: Relevant
Conduct in Sentencing and the Requirements of Due Process, 3 Const.L.J.
25, 24-26 (1993);  Heaney, The Realities of Guideline Sentencing:
No End to Disparity, 28 Am.Crim.L.Rev. 161, 208-220 (1991);  Herman,
The Tail that Wagged the Dog:  Bifurcated Fact-finding under the
Federal Sentencing Guidelines and the Limits of Due Process, 66
S.Cal.L.Rev. 289 (1992);  Beale, Procedural Issues Raised by Guideline
Sentencing:  The Constitutional Significance of the "Elements of
the Sentence," 35 Wm. & Mary L.Rev. 147, 157-158 (1993).
<u>6</u>/  See e.g., <u>United States v. Galloway</u>, 976 F.2d 414, 436 (8th
Cir. 1992)(Bright, J., dissenting, joined by Arnold, C.J., Lay,
J., and McMillan, J.);  <u>United States v. Silverman</u>, 976 F.2d 1502,
1519, 1527 (6th Cir. 1992)(Merritt, C.J., dissenting); <u>id</u>. at 1533
(Martin, J., dissenting); <u>United States v. Restrepo</u>, 946 F.2d 654,
663 (9th Cir. 1991)(Pregerson, J., dissenting, joined by Hug, J.);
<u>id</u>. at 664 (Norris, J., dissenting, joined by Hug, J., Pregerson,
J., and D.W. Nelson, J.

-40-

III.

**PETITIONER'S FIFTH AND SIXTH AMENDMENT RIGHTS WERE VIOLATED WHEN THE DISTRICT COURT INCREASED HIS SENTENCE BEYOND THE MAXIMUM ALLOWED UNDER THE PLEA AGREEMENT.**

Petitioner plead guilty to five counts of unarmed bank robbery. 18 U.S.C. § 2113(a). At sentencing, the district court increased Petitioner's guideline range by five levels based on a factual finding of the Presentence Investigation Report's conclusion that Petitioner possessed or used a firearm during the commission of the robberies. This finding increased the sentencing range to which Petitioner was exposed. Also, the court sentenced Petitioner in accordance with 18 U.S.C. 3553(b)(1), which mandated that the court impose a sentence within the enhanced guideline range.

The Court's factual finding- which increased the maximum sentence under the Guidelines- was a constitutionally impermissible basis for increasing the sentencing range. Since Petitioner plead guilty to unarmed bank robbery, and not armed bank robbery, the guilty plea did not allow for increased punishment based on firearm use or possession. As the Blakely Court held, "when a judge inflict punishment that the jury's verdict does not allow... the judge exceeds his proper authority."

Also, Petitioner was sentenced under the mandatory Guidelines which the Supreme Court invalidated in Booker. Because the mandatory guideline scheme was declared unconstitutional, Petitioner's sentence was rendered void and "cannot be a legal cause of impairment." Siebold, 100 U.S. at 377. For the reasons stated herein, Petitioner should be resentenced.

-41-

## CONCLUSION

Wherefore, Petitioner respectfully requests that this Court
(1) grant Rule 60(b) relief and reopen his initial § 2255 application;
(2) grant relief under § 2255 and order a resentencing under the
advisory Guideline system;$\underline{7}$/ and, (3) any other relief the Court
deems just.

Date: **3-29-05**                                     Respectfully submitted,

                                                    Shon Hopwood

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of this Rule
60(b) motion, along with the Sentencing Memorandum, was sent to
the party below.  Said motions were delivered personally by Mr.
Mark Hopwood.

Date: **4/14/2005**

                                                    Mark Hopwood- father of Petitioner

U.S. Attorney Office
% Alan Everitt

---

$\underline{7}$/  Petitioner has attached a sentencing memorandum outlining his
reasons why this Court should reduce his sentence, if a new sentencing
hearing is granted.  See Appendix "A".